NEW-YORK,
May, 1836.

Russell
v.
Rogers.

</div>

New trial granted.

---

RUSSELL, survivor, &c. *vs.* ROGERS.

Although a creditor, who has signed a *composition deed* and *released* his debtor *from all demands*, cannot in general sustain an action against such debtor for any demand arising on contract existing at the time of such composition; still, where such debtor had *fraudulently* released a judgment assigned by him to his creditor, long previous to such composition, and the creditor signed the composition deed in *ignorance of the fraud* committed upon him, *it was held*, that notwithstanding the composition and release, an action lay at the suit of the creditor for a breach of the covenants contained in the assignment.

A *replication* is not subject to the charge of *duplicity*, unless it sets up *two* or more *answers* to the matter relied on as a defence in the plea ; if it contain no more facts than are necessary to be stated to establish the point set up by way of answer to the plea, it is unobjectionable.

*Surplusage* in general will not vitiate a pleading.

Since the revised statutes, the consideration of a sealed instrument may be impeached, where such instrument is relied on either to maintain an action or to establish a defence.

Russell
v.
Rogers.

Where a defendant has pleaded the general issue, he cannot, upon a demurrer to the replication, attack the declaration.

DEMURRER to replication.    The plaintiffs declared in *covenant*, for that on the 8th March, 1821, the defendant assigned to them a bond and warrant of attorney given by William Jinks and Lyman Jinks, to secure the payment of $600, and authorized judgment to be entered thereon and the money to be collected ; and *covenanted* that the Jinks should pay the judgment so to be entered, or that, on their default, he would pay it, and that the plaintiffs should collect the whole amount either from the Jinks or from him the defendant.    The plaintiffs then aver, that they caused a judgment to be entered by virtue of the bond and warrant, and *assign for breach of covenant*, that after the entry of the judgment, to wit, on the 31st March, 1822, the defendant *fraudulently* received payment of the debt from the Jinks and *discharged* the judgment, and that subsequently this court annulled the judgment by reason of such discharge, whereby the plaintiffs lost the debt, and the costs and charges, &c. and so they say the defendant hath not kept his covenant.    The defendant pleaded *non est factum* and three special pleas substantially alike, the defence set up being : that on the 11th April, 1827, he compounded with his *creditors* and executed a *composition deed* of all his property to trustees for the benefit of his creditors, who thereupon executed a *release*, discharging him from all claims and demands, and that the plaintiffs were among the number of his creditors who executed such release.    To these pleas the plaintiffs *replied* by setting forth, 1. The agreement of the creditors to accept an assignment of the defendant's property, and to discharge him, having the names of the several creditors, with the sums due to them respectively, subscribed thereto, and amongst them the name of the firm of the plaintiffs, with the sum of $922,18 subscribed opposite thereto ; 2. The *release* pleaded by the defendant ; and 3. The *composition deed* executed by him ; and then averring that the debt of $922,18, annexed to the name of the plaintiffs in the agreement to accept a composition, and also in the deed executed to the trustees, was for a *demand wholly distinct and different* from the cause of action set forth in the declaration in this cause ; that when they executed the

*release* to the defendant on 11th April, 1827, they were *ignorant* of the fact that the defendant had discharged the judgment against the Messrs. Jinks, and executed the release with the understanding and belief that such judgment was in full force and collectable from the defendants therein; that at the time of the assignment of the bond and warrant to them, they gave a notice in writing to the defendant to serve upon the Messrs. Jinks, apprising them of the assignment, which the defendant promised to deliver to them, but which he *fraudulently* omitted to do, and on the contrary thereof *fraudulently* discharged the judgment, without the knowledge or approbation of the plaintiffs; and that the proceedings stated in the declaration were had, by which their rights under the assignment were annulled by order of this court, in consequence of the discharge of the judgment against the Jinks by the defendant. To this replication the defendant demurred.

NEW-YORK, May, 1836.

Russell
v.
Rogers.

*S. Stevens*, for the defendant.

*D. Gardner & H. P. Hunt*, for the plaintiff.

*By the Court*, SAVAGE, Ch. J. The facts set forth in the pleadings show a gross case of fraud upon the plaintiffs; if they are remediless, there must be some great defect in our system of jurisprudence.

When this cause was before us upon a former occasion, 10 *Wendell*, 477, the replication merely averred that the amount set opposite to the plaintiffs' names in the composition deed was $922,18, and that that amount was a debt wholly distinct and different from the demand set forth in the declaration. The question presented by that replication was, whether the deed, which in terms embraced all demands and causes of action, was to be restrained and held operative only upon the debt of $922,18, set opposite to the names of the plaintiffs subscribed to the deed. That question was discussed by Mr. Justice Nelson, and shewn, both upon principle and authority, to be against the plaintiffs, and to be within that class of cases which decide that a creditor's holding a distinct security for a debt, other than the one included in a composition

deed, is considered as a fraud upon the other creditors. That replication was decided to be bad, and leave was given to amend. At the close of his opinion, Mr. Justice Nelson intimates that if, in point of fact, the plaintiffs were ignorant of the discharge of the judgment having been executed by the defendant when they signed the compositon deed, the fraud would lie with the defendant, and his defence might fail. Upon that intimation, probably, the plaintiffs amended their replication, and present to us now the case supposed by Mr. Justice Nelson. Upon principles of equity and common honesty, the defendant cannot found an argument in his defence, and surely there is none arising from public policy. The cases of *Holmes* v. *Vinier*, 1. *Esp. R.* 131, and *Britton* v. *Hughes*, 15 *Com. Law R.* 502, show that where a creditor, having two demands, withholds *one* and signs as a creditor for the *other* only, he cannot be permitted subsequently to recover upon the demand withheld, and for two reasons, to wit, because such conduct is a fraud opon the other creditors and an act of oppression towards the insolvent debtor. Many of the cases found in the books refer to *Cockshott* v. *Bennett*, 2. *T. R.* 763, and as that is a leading case, I will state it. The defendants being indebted to several creditors, and insolvent, assigned all their effects to pay 11*s.* in the pound to their creditors; to which they all assented, and signed the composition deed. The plaintiffs refused to sign, as their debt had accrued just before the failure, unless the debtors would give a note for the remaining 9*s.*, which they did, and upon that note the action was brought. The defendants had a verdict, and upon a motion for a new trial, it was refused. Lord *Kenyon* remarks, that the temptation to give the note was a fraud on the other creditors. All the creditors being assembled for the purpose of arranging the defendants' affairs, they all undertook and mutually contracted with each other, that the defendants should be discharged from their debts after the execution of the deed; then the plaintiffs, in fraud of that engagement, entered into a contract with the defendants which prevented their being put in that situation, which was the inducement to the other creditors to sign the deed, and to relinquish a part of their demands. *Ashurst*, justice, said, if this security be frau-

dulent, a court of law may avoid it as well as a court of equity; and in my apprehension it is a fraud on the rest of the creditors, for they were induced to enter into this agreement on principles of humanity, in order to discharge the defendants from their encumbrances; and if they had not thought that such would have been the effect, they would not probably have signed the deed, but each would have endeavored to have obtained payment of his whole debts. *Buller*, justice, observed, that the defendants were absolutely in the power of the plaintiffs at the time when the note was given, and they took an undue advantage of the distressed situation of the defendants. In *Leicester* v. *Rose*, 4 *East*, 380, Lord *Ellenborough* remarks upon one creditor's having additional security. He asks, " Was there no fraud on the rest of the creditors? Was there no fraud even in the minds of the plaintiffs at the time? They were told that other creditors would not sign the trust deed unless they did so, and yet they bargained for better security as the ground of their signing it. Therefore, though this be not like some of the cases mentioned, where security was obtained by the particular creditors for *more* than the other creditors were to receive, yet the principle of all of them is the same, that where the creditors in general have bargained for an equality of benefit and mutuality of security, it shall not be competent for one of them to secure any partial benefit or security to himself. This is the *effect* of all that has been said in those cases." Lord *Eldon* too, speaking upon the same subject, 15 *Vesey*, 55, says, it is also considered a fraud upon the creditors; the reasoning upon an argument of this sort being that it is produced by the humanity and feeling of the creditors towards the debtor; but if it is competent to six out of seven creditors to obtain sureties, even for the same amount, the seventh is imposed upon, as instead of having the evidence of the other six that the act he is about to do is reasonable, proved by the same act on their part, he is circumvented by them; obtaining as against him from their debtor an advantage, which they will not give him as against themselves.

I have quoted from these cases the expressions of distinguished judges to show what is meant by the act of one cred-

NEW-YORK,
May, 1836.

Russell
v.
Rogers.

itor obtaining better terms than the others, (in case of receiving a composition from an insolvent debtor,) being considered a fraud upon the other creditors. The principle is, that there shall be perfect equality. If creditors agree to accept of a composition, there must be equal terms entered into by all ; they must receive an equal amount, in proportion to their demands, and upon equal security, if security is taken. Upon the principle of these cases, therefore, if the plaintiffs have taken any undue advantage of the defendant ; have exacted any advantage over the other creditors, as a consideration for signing the composition deed ; if they have required any thing by way of preference over the other creditors, or any thing oppressive, as against the defendant, then they are within the principle which is brought forward against their right to recover. The facts, however, will not justify such a conclusion. The transaction out of which this action grows took place, it is inferrible, before the defendant became insolvent, and six years previous to the execution of the composition deed ; it was not, therefore, an advantage obtained *after* an agreement to release the debtor upon terms. There is no ground for saying that any advantage was taken of the defendant's necessities, to induce him to execute the assignment. As the case was presented formerly, it did appear as if the plaintiffs, relying upon this assignment, had not presented their whole demand, to be compounded for, but had reserved a part to be paid in full. In that aspect of the case the plaintiffs could not recover ; nor could they now, but for the fraudulent act of the defendant, in depriving them of the benefit of the judgment against Jinks, and the further fact of their ignorance of that fraud, when they released the defendant. When the composition deed was signed, this part of their demand against the defendant was considered as extinguished. Had it then been considered as an existing demand against the defendants, the assignment of the judgment should have gone to the trustees, for the benefit of all the creditors, and the plaintiffs should have taken their proportion upon the whole ; but this demand was supposed to be satisfied by the judgment against Jinks, and to that alone could the plaintiffs have looked, but for the fraud of the defendant.

It is argued that the plaintiff's remedy, if any, is an action on the case for the fraud ; there is no doubt that such an action would lie, upon the facts admitted by this demurrer, but it does not follow that the present action may not be maintained. If this action cannot be considered a fraud upon the other creditors, it does not lie in the defendant's mouth to say that *he* has been guilty of a fraud, and therefore is not liable upon his covenant. I have endeavored to show that this is not a case where the plaintiffs can be charged with having practised a fraud upon the other creditors, because the execution of the assignment of the judgment had no connection with the composition deed ; and because the plaintiffs supposed their old demand was satisfied by that judgment so assigned to them, and having no knowledge of their demand against the defendant, growing out of his fraudulent act. It is not fraudulent against the other creditors, because it does not diminish the fund from which they are to receive their proportion ; nor was any fraud practised upon the defendant, by taking advantage of his necessities, or otherwise. On the contrary, the defendant is the fraudulent party, and the creditors are no more defrauded, in respect of their property, or of their benevolent and humane feelings, than if an action on the case had been brought against the defendant, which it is not denied might be maintained. Upon the merits of this case, therefore, I am satisfied that the intimation made by Mr. Justice *Nelson* was founded upon sound legal principles ; and if the amended replication is good, in form, there it no obstacle in the way of the plaintiff's recovery.

In point of form, the only objections to the replication which seem to be relied upon are those of *duplicity* and *departure.* A replication is not liable to the charge of duplicity, if it contain no more facts than are necessary to make out one point. If, indeed, the replication consists in a denial of the facts set up in the plea, then it may be enough, sometimes, for the plaintiff to confine himself to a denial of one fact, particularly, if such denial will defeat the plea ; but where the facts asserted in the plea are not denied, but the replication attempts to avoid them, then the replication may, like any other pleading, contain as many facts as are necessary to make out the point

NEW-YORK, which avoids the plea. To determine whether this replica-
May, 1836. tion is faulty, we must recur to the previous pleadings, and

Russell see what the point of the replication should be. The decla-
v. ration charges the defendant with a breach of covenant; and
Rogers. in that breach with the perpetration of a fraud, in discharging
the judgment against the Jinks. The special pleas do not
deny either, but set up extraneous matter, by way of defence ;
consisting of the assignment of the defendant's property, the
deed of composition, in which all the creditors of Rogers uni-
ted, and the release executed by the plaintiffs. It was neces-
sary for the plaintiffs either to deny the facts in the pleas, or
such of them as would defeat the defence ; or to set up other
facts, in avoidance of the pleas, and maintain the cause of ac-
tion set forth in the declaration. This they have attempted to
do. They cannot deny the facts asserted in the pleas, but have
asserted other facts, which, as I have endeavored to show,
avoid the effect of the facts pleaded ; and in doing so, it be-
came necessary to state facts enough to show why the plain-
tiffs were not bound by their deed of release. In showing
that, it became necessary to state such facts as would show a
fraud upon the part of the *defendant*, and that the *plaintiffs*
were not guilty of a fraud upon the other creditors. In show-
ing the defendant guilty of fraud, they state the notice of the
assignment to the Jinks, which the defendant ought to have
served, but did not ; and the release of the Jinks judgment,
in violation of his duty and his covenant, with intent to de-
fraud ; and to show their own good faith towards the other
creditors of the defendants, who joined in the deed of compo-
sition, they state their ignorance of this fraud of the defendant,
at the time of joining in the composition deed. It is possible
that the replication contains more facts than were necessary
to be stated, but superfluity does not vitiate. It does not at-
tempt to give *two answers* to the pleas.; the matter in avoid-
ance is one answer, and only one—it consists of fraud in the
defendant, and innocence on the part of the plaintiffs. Neith-
er, alone, would have been sufficient in this case. Had the
plaintiffs simply replied the defendant's fraud, it would have
been said that as the plaintiffs knew of that fraud, they should
have claimed the amount of the judgment against Jinks, in

NEW-YORK,
May, 1836.

Russell
v.
Rogers.

addition to the $922,18. Had they omitted to state the fraud, there would have been no point in the replication. In my judgment, therefore, there is no *duplicity*. Nor is there any *departure;* the replication avoids the pleas, and therefore leaves the declaration unanswered; it does not attempt to recover upon a different ground from that assumed in the declaration, to wit, the defendant's covenant, and fraudulent breach of it.

Another objection to the replication is, that it seeks to avoid the deed of release, by averring the consideration fraudulent, which it is argued cannot be done in a court of law. The revised statutes which treat of evidence declare, 2 *R. S.* 406, § 77, " In every action upon a sealed instrument, and where a set off is founded upon any sealed instrument, the seal thereof shall only be presumptive evidence of a sufficient consideration, which may be rebutted in the same manner, and to the same extent as if such instrument were not sealed." The construction which has already been put upon this statute is, that in cases where the suit or the defence rests upon a sealed instrument, the consideration may be impeached in the same manner, and to the same extent as if the instrument was without a seal.

The defendant also seeks to attack the declaration, but having pleaded the general issue, he is estopped from saying, upon his demurrer to the replication, that the declaration is defective. This is a most salutary rule, and this case exemplifies the propriety of it. A plea to the merits is an admission, so far as pleading is concerned, that the declaration is good in form and substance. Hence a party cannot plead and demur to the same pleading. If the defendant thought the declaration insufficient, he should have demurred at once, and not drawn the plaintiff into a long train of special pleading; and thus made a large bill of costs, and consumed the time of the court in discussing unimportant matters.

Upon the whole, therefore, I am of opinion that the replication is good in form and substance.

Judgment for plaintiff on demurrer; leave to defendant to rejoin, on payment of costs.